UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAVIER ALVAREZ,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

No. 2:17-cv-1419 DB

ORDER

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment.[1]  Plaintiff argues that the Administrative Law Judge's treatment of the medical opinion evidence and plaintiff's testimony constituted error.  For the reasons explained below, plaintiff's motion is granted in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings.

PROCEDURAL BACKGROUND

On August 29, 2013, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c).  (See ECF Nos. 6 & 8.)

("SSI") under Title XVI of the Act alleging disability beginning on July 1, 2010. (Transcript ("Tr.") at 20, 194-209.) Plaintiff's alleged impairments included depression, sleep disorder, and arthritis. (Id. at 228.) Plaintiff's applications were denied initially, (id. at 128-32), and upon reconsideration. (Id. at 134-38.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on December 15, 2015. (Id. at 40-77.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 41-42.) In a decision issued on January 28, 2016, the ALJ found that plaintiff was not disabled. (Id. at 35.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since July 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: psoriasis and psoriatic arthritis, osteoarthritis, degenerative joint disease of the knees, obesity, obstructive sleep apnea, major depressive disorder, psychotic disorder and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the individual is limited to simple, routine tasks; occasional public contact, meaning up to one-third of the workday. The individual could sit six hours; stand, walk six hours each with normal breaks. The individual could lift and/or carry 20 pounds occasionally, 10 pounds frequently. The individual could never climb ladders, ropes or scaffolds; could occasionally climb ramps or stairs; could occasionally balance, stoop, kneel, crouch or crawl. The individual could never work around hazards like moving dangerous machinery, unprotected heights, and could not operate motor vehicles.
>
> 6. The claimant is capable of performing past relevant work as a fast foods worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

2

|   |   |
|---|---|
| 1 | 7. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)). |
| 2 | |

(Id. at 22-35.)

On May 12, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's January 28, 2016 decision. (Id. at 1-4.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on July 10, 2017. (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

3

> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion argues that the ALJ committed the following two principal errors: (1) the ALJ's treatment of the medical opinion evidence constituted error; and (2) the ALJ's treatment of plaintiff's subjective testimony constituted error. (Pl.'s MSJ (ECF No. 13-1) at 14-24.[2])

I. Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, plaintiff challenges the ALJ's treatment of the opinion of examining physician, Dr. Silvia Torrez, Psy. D.[3] (Pl.'s MSJ (ECF No. 13-1) at 14-19.) Dr. Torrez examined plaintiff on October 12, 2015, for a psychological evaluation. (Tr. at 32, 425-34.) Dr. Torrez opined plaintiff was limited in several respects which the ALJ's decision recounted in detail. (Id. at 32.) For example, Dr. Torrez opined that plaintiff was markedly limited in the ability to work in coordination or proximity to others, in the ability to get along with co-workers, in the ability to maintain socially appropriate behavior, and to travel in unfamiliar places and/or to use public transportation. (Id. at 436-37.)

Dr. Torrez also found that plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods, perform activities within a schedule, make simple work-related decisions, and in the ability to complete a normal workday and workweek without interruptions for psychologically based symptoms. (Id. at 436.) According to Dr. Torrez, plaintiff would be unable to work approximately three days per month because of plaintiff's impairments. (Id. at 438.) The ALJ afforded "little weight" to Dr. Torrez's opinion. (Id. at 33.)

A. Single Examination

The ALJ's reasoning began by noting that Dr. Torrez's opinion was "based on a single examination." (Id.) That, of course, cannot serve as a legitimate reason for discrediting the opinion of an examining physician. The opinion of an examining physician is nearly always

---

[3] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).

rendered after a single examination. And the ALJ afforded "great weight" to the opinions of physicians that never examined the plaintiff. (Id.)

B. Inconsistencies

The ALJ went on to reason that Dr. Torrez's opinion was "inconsistent with her examination indicating minimal symptoms, most of which was subjectively reported," and the lack of "significant mental status findings throughout the record when medication compliant[.]" (Id. at 33.) "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017); see also Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987) ("unlike a broken arm, a mind cannot be x-rayed").

It is also unclear what the ALJ meant by "minimal symptoms" or what "significant mental status findings" the ALJ thought should have been found to support Dr. Torrez's various opined limitations.

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). Moreover, the ALJ acknowledged that plaintiff's Global Assessment of Functioning ("GAF") scores ranged "from 45 to 60, indicating moderate to severe symptoms or moderate to severe impairment in social, occupational or school functioning."[4] (Tr. at 31.) Although the ALJ gave only "little weight" to the "scores below 51," the ALJ afforded "great weight" to "the scores 51 and above[.]" (Id. at 32.) "A GAF score

---

[4] A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014)

6

between 51 to 60 describes '<u>moderate symptoms</u>' or any <u>moderate difficulty</u> in social, occupational, or school functioning.'"[5]  Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (emphasis added).

C. <u>Daily Living</u>

The ALJ also referred generally to plaintiff's "high activities of daily living," discussed elsewhere in the ALJ's decision, as being inconsistent with Dr. Torrez's opinion. (Tr. at 33.) In this regard, the ALJ's decision stated that plaintiff "made inconsistently good reports of activities of daily living" explaining:

> He is usually home alone during the day while his fiancée works Mondays through Fridays, and performs light household chores, shops for groceries. He has no problems with personal care, prepares his own meals, cleans and does the laundry, and performed minor childcare for his niece and nephew at home. Although the claimant testified otherwise, the record indicates that he visits his mother three times per month, performing random projects for her, goes out to eat once a month with his fiancée, and goes to the movies occasionally. He reported enjoying painting, drawing, writing, internet browsing, watching movies and playing video games, and reported texting on the phone and visiting Max twice a month, as well as attending church every Sunday, were he is active. The claimant began his relationship with his now fiancée subsequent to his alleged onset date, with plans for a wedding in June 2015.

(<u>Id.</u> at 26.)

The ALJ's decision, however, does not explain why those activities are inconsistent with Dr. Torrez's opined limitations based on plaintiff's work-related mental functioning. And no inconsistency is apparent. For example, there is nothing inconsistent about plaintiff being able to visit his mother, browse the internet, text, and play video games while still being impaired in the ability to get along with coworkers.

In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). This is so because

////

---

[5] A GAF score in the range of 41 to 50 denotes: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34.

7

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.").

### D. Public Transportation

In support of the decision to discredit Dr. Torrez's opinion, the ALJ also stated that "[t]he opinion that the claimant could not use public transportation is directly contradicted by the claimant's testimony and travel to the hearing on public transportation." (Id. at 33.) It is true that one of the abilities assessed by Dr. Torrez was plaintiff's "ability to travel in unfamiliar places and/or to use public transportation." (Tr. at 437.) In assessing this ability, Dr. Torrez checked the box indicating that plaintiff was markedly limited.

Because the description of two separate abilities—the ability to travel to unfamiliar places and the ability to use public transportation—are related through "and/or" the description of abilities is somewhat broad. Dr. Torrez's opinion may have been only that plaintiff's ability to travel in unfamiliar places was markedly impaired. Regardless, given the ambiguity and the evidence before the ALJ, it was certainly permissible for the ALJ to discredit this limitation to the extent it concerned plaintiff's ability to use public transportation. But this lone potential inconsistency with a single limitation cannot serve as a specific and legitimate reason for rejecting all of Dr. Torrez's opined limitations.

### E. Social Outbursts

The final reason offered by the ALJ for rejecting Dr. Torrez's opinion was the assertion that there was "no evidence of social outburst throughout the record." (Id. at 33.) No further explanation is provided by the ALJ. Even accepting this assertion as true, it is entirely unclear

8

why this fact should serve as a specific and legitimate reason for rejecting Dr. Torrez's entire opinion. Defendant argues that this fact "conflicted with Dr. Torrez's finding that Plaintiff was markedly limited in areas of social functioning." (Pl.'s MSJ (ECF No. 15) at 10.) But Dr. Torrez opined that plaintiff was markedly limited in only two aspects of "social interaction"—the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.[6] (Tr. at 436-37.) There is nothing inconsistent about Dr. Torrez's opinion with respect to these abilities and a lack of social outbursts.

For the reasons stated above, the court finds that the ALJ failed to provide specific and legitimate, let alone clear and convincing, reasons for discrediting Dr. Torrez's opinion. Accordingly, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion evidence constituted error.

II. Plaintiff's Subjective Testimony

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

---

[6] Moreover, the court may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions. See Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

9

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[7] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, plaintiff challenges the ALJ's treatment of plaintiff's testimony concerning the severity of the "pain and other symptoms arising out of his medically documented, severe psoriatic arthritis."[8] (Pl.'s MSJ (ECF No. 13-1) at 19.) With respect to these symptoms, the

---

[7] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted). The ALJ's decision here, however, was issued on January 28, 2016, prior to the implementation of SSR 16-3p.

[8] In this regard, plaintiff does not challenge the ALJ's treatment with respect to plaintiff's testimony concerning plaintiff's mental impairments, only "the severity of [plaintiff's] pain and other symptoms arising out of his medically documented, severe psoriatic arthritis and other physical impairments." (Pl.'s MSJ (ECF No. 13-1) at 20.)

ALJ's decision explained that plaintiff reported pain in his joints and difficulty standing. (Tr. at 25.) The plaintiff had psoriasis on "his knees, midsection, [and] parts of the head, causing skin to rip open if he moves." (Id.) Plaintiff used "medication and topical creams, but . . . they were not helping." (Id.) Plaintiff also testified about "difficulty walking more than 10 to 15 minutes[.]" (Id. at 26.)

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were "not entirely credible[.]" (Id.) One of the reasons given by the ALJ in support of this determination was a lack of treatment.

In this regard, the ALJ noted that while plaintiff alleged disability beginning on July 1, 2010, "the medical record indicates no treatment for over two years for any condition" until August 12, 2012. (Id. at 26-27.) Then, after plaintiff was treated on January 17, 2014, plaintiff "did not present for treatment for over a year." (Id. at 27.) "An ALJ is clearly allowed to consider . . . the unexplained absence of treatment for excessive pain." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

The ALJ also discredited plaintiff's testimony due to plaintiff's failure to comply with prescribed medications. (Tr. at 28.) An ALJ may consider the "failure to . . . follow a prescribed course of treatment" in evaluating a plaintiff's testimony. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.").

For the reasons stated above, the court finds that the ALJ provided clear and convincing reasons for rejecting plaintiff's testimony concerning plaintiff's pain and other symptoms arising out of his severe psoriatic arthritis. Plaintiff, therefore, is not entitled to summary judgment on this claim.

////

CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Plaintiff argues that this matter should be remanded for additional proceedings. (Pl.'s MSJ (ECF No. 13-1) at 25.) As is evidence by the mixed ruling above, the court cannot say that further administrative proceedings would serve no useful purpose. This matter will, therefore, be remanded for further proceedings consistent with this order.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (ECF No. 15) is granted in part and denied in part;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: September 14, 2018

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\alvarez1419.ord